IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COLEEN D.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21 C 1209 |
| v. | ) |
| | ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) Maria Valdez |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Coleen D.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 20] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 7, 2019, Plaintiff filed a claim for DIB, alleging disability since June 1, 2018. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on August 7. 2020, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A medical expert ("ME") and a vocational expert ("VE") also testified.

On September 2, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 1, 2018. At step two, the ALJ concluded that Plaintiff had the following severe impairments: chronic idiopathic pericarditis; aortic aneurysm; arrhythmias; hypertension;

hyperlipidemia; asthma; restrictive lung disease; osteoarthritis of the left knee, left hip, and left (non-dominant) elbow; obesity; mild hearing loss with tinnitus and vertigo; major depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; should avoid work around hazards (including no work around heights or heavy machinery); should work in an indoor temperature-controlled work environment (avoiding extremes of temperatures, pulmonary irritants, and high humidity); can learn, understand, remember, and carry out simple work instructions; should work in a routine environment with no more than occasional changes in the work environments or processes; can make simple work-related decisions; can work at an average rate of pace or slower, but not a fast paced production environment (*e.g.*, fast paced and hourly timed tasks should be avoided); can work on an occasional basis with the general public and co-workers, but no team or tandem work; and can sustain the necessary attention and concentration in 2-hour increments throughout the typical workday. At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a cashier. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found

3

that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

5

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

6

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error because the ALJ's residual functional capacity assessment was not supported by substantial evidence and the ALJ's evaluation of Plaintiff's subjective symptoms was legally insufficient. Plaintiff also argued in her opening brief that the ALJ's decision is constitutionally defective, but she has withdrawn that argument in her reply brief. (Pl.'s Reply at 15 n.2.)

In advancing her first argument, Plaintiff contends, *inter alia*, that the ALJ rendered "[a] middle-ground RFC, without evidence to back it, [which was] impermissible and not supported by substantial evidence." (Pl.'s Br. at 7.) Pertinent to that argument, in assessing the medical opinion evidence, the ALJ noted the State agency medical consultants' opinions that Plaintiff could perform a light range of exertion, but found those opinions "of little persuasiveness" because the consultants "had no occasion to consider the hearing level evidence." (R. 38.) The ALJ also assessed the ME's opinion that Plaintiff could perform light work, but found that opinion only to have "some persuasiveness." (*Id.*) The ALJ then stated: "in considering the claimant's subjective complaints further, the undersigned has reduced the claimant's residual functional capacity to the next exertional level which appears more consistent with her demonstrated abilities during cardiopulmonary rehabilitation." (*Id.*)

Plaintiff is correct that "ALJ's are not permitted to construct a 'middle ground' RFC without a proper medical basis." *Norris v. Astrue,* 776 F. Supp. 2d 616,

7

637 (N.D. Ill. 2001). Here, that is precisely what the ALJ did – she fashioned a compromise RFC by synthesizing the medical opinions and Plaintiff's statements about the severity of her symptoms.³ With respect to the fallacy of that approach, the Court finds instructive the decision in *Juanona N. v. Saul*, No. 19 C 4110, 2021 U.S. Dist. LEXIS 79419 (N.D. Ill. Apr. 26, 2021). In that case, the court found that the ALJ had erroneously reached a centrist RFC:

> Instead of citing evidence, the ALJ appears to have split the difference between Claimant's statement that she could barely lift a half-gallon of milk and the state-agency doctors' finding that no RFC was necessary. That was erroneous because ALJs are not permitted to construct a "middle ground" RFC without a proper medical basis…and the ALJ must explain in at least minimal form what it was that led her to find that Claimant could carry out the RFC by complying with the standards of SSR 96-8p, 1996 SSR LEXIS 5.

*Id.* at *27 (citations and internal quotations omitted). Here, like in *Juanona*, the ALJ split the difference between Plaintiff's testimony and the doctors' light-work conclusions without providing any substantive analysis or specific supporting medical evidence. As such, the ALJ "failed to construct the requisite accurate and logical bridge from the evidence to the ALJ's 'middle ground' physical RFC." *Marianne T. v. Saul*, No. 19 C 6171, 2021 U.S. Dist. LEXIS 52725, at *13 (N.D. Ill. Mar. 22, 2021). The ALJ's error in that regard requires that this matter be remanded. *See Megan B. v. Saul*, No. 18 C 1836, 2020 U.S. Dist. LEXIS 101344, at *14-15 (N.D. Ill. June 10, 2020) ("The ALJ apparently believed that the RFC he

---

³ Defendant concedes the middle-ground nature of the ALJ's RFC assessment, admitting that "the ALJ adopted an RFC assessment that was more limited than any medical source opined was necessary" and "took plaintiff's subjective allegations into account and concluded that a restriction to sedentary work was more appropriate." (Def.'s Memo. at 4-6.)

8

chose reflected a middle ground between the two competing factions of medical opinions…But in his effort to find a consensus, the ALJ crafted an RFC that is unsupported by any medical evidence or opinion.") (citation omitted).

As part of her first argument, Plaintiff also asserts that the ALJ failed to sufficiently account for her likely work absences. Plaintiff points out that she has been prescribed Warfarin/Coumadin since her June 2018 heart surgery, and maintenance of that medication requires frequent blood draws. (Pl.'s Br. at 10.) Plaintiff testified that she has to go to the anticoagulation clinic for blood draws every two weeks and it must be done during regular business hours. (R. 96.) When there is evidence such as this concerning absenteeism, the ALJ must "explicitly consider whether Claimant's ailments caused her to miss work and, if so, how that finding affects her RFC." *Alesia v. Berryhill*, No. 16 CV 9806, 2018 WL 3920534, at *8 (N.D. Ill. Aug. 16, 2018). Further, "[i]f the ALJ finds that Claimant's ailments did not cause her to miss work or that Claimant's work absences do not otherwise affect her RFC, she should specifically explain why she came to that conclusion." *Id*. Here, despite the evidence concerning Plaintiff's required blood-draw appointments, the ALJ did not explicitly consider Plaintiff's likely absenteeism and provided no explanation for her implicit conclusion that Plaintiff's absences would not affect her ability to meet job requirements. The ALJ's error in that regard was not harmless, as the VE testified that Plaintiff's medical appointments would count as absences and absenteeism that exceed one and a half days or more per month would be work-preclusive. (R. 101-102.) *See Lenora W. v. Kijakazi*, No. 2:21-CV-50178, 2022 WL

9

4386242, at *4 (N.D. Ill. Sept. 22, 2022) ("Although the ALJ asked the VE about absenteeism and time of task . . . the ALJ's decision does not discuss whether Plaintiff's long course of treatment would result in two or more absences per month for twelve or more months, the amount the VE testified would preclude work."); *Tate v. Berryhill*, No. 17 C 1855, 2018 WL 688317, at *5 (N.D. Ill. Feb. 2, 2018) ("[T]he VE testified that more than one absence per month would preclude Plaintiff from competitive employment. Therefore, the number of absences Plaintiff requires due to medical appointments is determinative in this case, and the ALJ erred by not addressing this issue in his decision.").

Defendant raises the puzzling argument that the ALJ did not err with respect to Plaintiff's absences because "Dr. Krishnamurthi was aware of plaintiff's schedule of lab checks and still opined that she was capable of full-time light work." (Def.'s Memo. at 9.) That argument falls flat because, as Plaintiff points out, the question of whether she could perform jobs despite her absences "is a vocational question, not a medical one." (Pl.'s Reply at 6.) And, ultimately, the ALJ's failure to account for Plaintiff's likely absences is another error that requires that this matter be remanded. *See Gholston v. Astrue*, No. 11 CV 4671, 2012 WL 1463553, at *15 (N.D. Ill. Apr. 27, 2012) (on remand "[t]he ALJ should give due consideration to Newman's testimony that the jobs he identified that Gholston can perform would accommodate no more than 1.5 days of absenteeism per month, which may render Gholston disabled for this period."); *Dennis S. v. Kijakazi*, No. 19 CV 2245, 2022 WL 425715, at *8 (N.D. Ill. Feb. 10, 2022) ("In sum, the ALJ's decision fails to properly

10

address and consider favorable evidence and testimony related to Plaintiff's potential for absences and off-task time. Therefore, the ALJ's determination at step five that there existed other work in significant numbers that the plaintiff could perform was not based on substantial evidence, which supports reversal of her decision.").

Plaintiff also attacks the ALJ's subjective symptom analysis. As part of her argument on that topic, Plaintiff contends that the ALJ improperly discounted her alleged symptoms based on her activities of daily living. (Pl.'s Br. at 18.) In the ALJ's decision, she noted Plaintiff's allegations that she had "a limited ability to work due to major depression, PTSD, anxiety disorder, heart surgery, diabetes, and asthma." (R. 35.) The ALJ further noted that Plaintiff "reported experiencing vertigo, which affect[s] her balance and ability to walk, progressively worsening auditory hallucinations, double vision due to changes in keratoconus, recent diagnosis of COPD and chest pains with pulmonary therapy." (*Id.*) However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

With respect to an ALJ's assessment of a claimant's alleged symptoms, this Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). However, as to daily activities, the ALJ must "explain the 'inconsistencies' between [a claimant's] activities of daily living . .

11

. complaints of pain, and the medical evidence." *Charles B. v. Saul*, No. 19 C 1980, 2020 WL 6134986, at *12 (N.D. Ill. Oct. 19, 2020) (citation omitted). *See also Rainey v. Berryhill*, 731 F. App'x 519, 522 (7th Cir. 2018) ("While an ALJ may consider daily activities when assessing the claimant's credibility, the ALJ must also explain how the claimant's activities are inconsistent with medical evidence.") (citations omitted). Put differently, the ALJ must "adequately explain how Plaintiff's ability to perform his daily activities undermined his allegations of disability." *Steven L. v. Saul*, No. 19-CV-6047, 2021 WL 1531603, at *2 (N.D. Ill. Apr. 19, 2021). A level of specificity is required, and the ALJ must explain why a claimant's "daily activities are inconsistent with his specific symptom allegations." *Donte A. R. v. Saul*, No. 19 C 2363, 2020 WL 7241066, at *8 (N.D. Ill. Dec. 9, 2020) (citations omitted).

Here, the ALJ found that Plaintiff was not fully credible, and, as part of that determination, the ALJ stated that "[n]o greater limitations" beyond the RFC assessment "are warranted given sufficient physical and mental functioning to engage in activities such as grocery shopping, watching television, reading (even her [sic] cell phone), engaging in physical exercise (therapy and walking), and working." (R. 38.) As an initial matter, Plaintiff points out that the ALJ ignored qualifying statements about Plaintiff's activities, such as Plaintiff's reports that she could only grocery shop for 30 minutes at a time with the aid of a friend and had problems reading or watching television due to concentration issues. (Pl.'s Br. at 18.) Furthermore, and in any event, the Court agrees with Plaintiff that the ALJ's credibility determination vis-à-vis Plaintiff's activities of daily living was

12

insufficiently supported. The ALJ did not adequately explain how, for instance, Plaintiff using a cell phone contradicts her allegations concerning auditory hallucinations and chest pain. *See Charles B.*, 2020 WL 6134986 at *12 ("The ALJ here did not explain how Charles's having custody of his kids, feeding his dog, shopping for groceries, or talking to others daily was inconsistent with his claims of having severe chest pain, swelling and pain in his left leg, and depression."); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("Although [the ALJ] briefly described Villano's testimony about her daily activities, he did not, for example, explain whether Villano's activities were consistent or inconsistent with the pain and limitations she claimed."). Accordingly, the inadequacy of the ALJ's symptom analysis is another error that requires that this matter be remanded. *See Steven L.*, 2021 WL 1531603 at *4 ("On remand, the ALJ should more fully analyze Plaintiff's activities of daily living and whether they are in fact inconsistent with his disability claim, taking care to explain how his daily activities truly (or not) equates to the ability to perform work at a level necessary for competitive employment."); *Pearline P. v. Saul*, No. 17 C 8996, 2020 WL 370187, at *8 (N.D. Ill. Jan. 22, 2020) ("On remand, the ALJ should . . . provide a sufficient explanation about how his assessment of Claimant's activities of daily living inform his ultimate decision as to what level of work, if any, Claimant is capable of performing.").

Finally, the Court has identified an additional issue that warrants consideration herein. As stated above, the ALJ found that one of Plaintiff's severe impairments is post-traumatic stress disorder (PTSD). Pertinent to Plaintiff's

13

PTSD, the ALJ noted that Plaintiff "was hospitalized at Chicago Behavioral Hospital . . . for suicidal ideation with intent to overdoes on medication [and] [h]er diagnosis on discharge included generalized anxiety disorder, PTSD, and major depressive disorder." (R. 36.) The ALJ further noted Plaintiff's reports that she experienced "PTSD trauma including various forms of childhood abuse by family members." (*Id.*) The ALJ also noted that Plaintiff "alleged 'uncontrollable mood swings[,] bouts of raging anger[,]' and thoughts of hurting herself and those who cause her anger." (*Id.* at 35.) However, beyond merely noting Plaintiff's PTSD, the ALJ did not specifically address that condition. The Court finds that the ALJ erred by failing to explicitly assess Plaintiff's PTSD in a fulsome manner. *See Lewandowski v. Colvin*, No. 16 C 9317, 2017 U.S. Dist. LEXIS 107311, at *20-21 (N.D. Ill. July 11, 2017) (finding error where ALJ failed to address claimant's PTSD diagnosis). In light of Plaintiff's diagnosis of PTSD, which the ALJ recognized, it was incumbent on the ALJ to specifically explain the severity of the condition, which she did not do. *See Nadira F. v. Saul*, No. 19-cv-6517, 2020 U.S. Dist. LEXIS 199688, at *6 (N.D. Ill. Oct. 27, 2020). The ALJ's failure to adequately evaluate Plaintiff's PTSD is another issue that requires remand. *See Derry v. Berryhill*, 756 F. App'x 619, 624 (7th Cir. 2019) (finding remand necessary where "[t]he ALJ did not account for objective observations confirming the severity and persistence of [claimant's] depression, PTSD, and military sexual trauma"); *Nadira F.*, 2020 U.S. Dist. LEXIS 199688 at *8 ("[R]emand is necessary for the ALJ to properly consider Plaintiff's PTSD diagnosis.").

14

Based on its conclusion that remand is necessary for the reasons identified above, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken to ensure that all of Plaintiff's limitations (including those arising from obesity and fatigue) are fully considered, all aspects of the ALJ's residual functional capacity assessment are properly derived, and Plaintiff's subjective symptoms are properly evaluated.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 20] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez*

**DATE:     November 30, 2022**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**

15